**Dorothy Baumgartner, Plaintiff-Appellee, v. John C. Baumgartner, Defendant-Appellant.**

Gen. Nos. 11,084, 11,116.

Second District, First Division.
February 11, 1958.
Rehearing denied March 17, 1958.
Released for publication March 17, 1958.
Opinion modified March 31, 1958.

286

Carbary & Carbary, George D. Carbary, and Warren Carbary, of Elgin (James L. Wilder, Paul M. Hamilton, of counsel) for John G. Baumgartner, appellant.

Charles A. Darling and O'Brien, Burnell & Puckett, of Aurora (Charles A. Darling, Donald L. Puckett, and Wilson D. Burnell, of counsel) for appellee, Dorothy Baumgartner.

JUSTICE SPIVEY delivered the opinion of the court.

Two appeals involving the same parties, but different issues arising out of an original suit for separate maintenance and consolidated herein. The action was commenced by Dorothy Baumgartner on October 7, 1955, when she filed her complaint for separate maintenance after having secured a waiver of the waiting period. An injunction without notice or bond was

issued on the same date to restrain the defendant from coming upon the premises the parties had occupied the night before as their marital domicile. Although the plaintiff's suit was found to be without equity and dismissed after protracted litigation, the court awarded the plaintiff attorney's fees in the sum of $5,000. Defendant appeals from this award and from an order of the trial court striking his supplemental cross-appeal for divorce filed by leave of court, which alleged desertion by the plaintiff. These are the issues involved in appeal number 11,084. After notice of appeal, the trial court, at plaintiff's request, allowed an additional $3,000 to the plaintiff for attorney's fees to defend the appeal. In addition, certain other awards were made to cover the expenses of the appeal. Defendant has appealed from the award of attorney's fees as being excessive, and the propriety of the attorney's fee is the only question presented in appeal number 11,116.

The issues are not unusually confusing, but due to the fact that there are two appeals and a question concerning fees being involved in each, we believe the facts in the cases should be reviewed.

On December 23, 1954, the parties were married. Their marriage was short lived and while there was testimony concerning some acts of cruelty by the defendant, the plaintiff testified that the last act of cruelty was in July of 1955, and that after these little arguments and disputes, she forgave him (the defendant) and they made up and everything was "hunky dory." Notwithstanding their pleasant relationship, the plaintiff visited lawyers on several occasions during her husband's absence at work. It would seem, that on October 6, 1955, the plaintiff consulted her present counsel and then returned to her home where she spent the night with her husband. On the morning of October 7, the defendant left for work as usual and his wife went to her lawyer's office where she signed instruments to secure authority to file instanter her

complaint for separate maintenance and for a temporary injunction. This, notwithstanding the fact that she was not living separate and apart from her husband, but rather, was living with him. An order was entered granting leave to file the complaint instanter, and a temporary injunction was issued to restrain the defendant from coming about the home of the plaintiff and defendant. This home was owned by the defendant. The injunction was served on October 7, 1955.

Plaintiff's complaint alleged the necessary jurisdictional matter, the marriage, that no children were born of the marriage, and that the plaintiff had demeaned herself as a good wife. It was further alleged that the defendant has committed acts of cruelty and had made plaintiff's life miserable and embarrassing. The latest specific act of cruelty pleaded was said to have occurred in May of 1955. Plaintiff alleged that she gave the defendant no cause to treat her in a cruel manner, and alleged that the defendant was a man of great wealth. She asked for separate maintenance, attorney's fees and expenses, temporary alimony and temporary attorney's fees and an injunction. Plaintiff did not allege that she was living separate and apart from the defendant.

Defendant answered plaintiff's complaint admitting the jurisdictional matters, the marriage and that there were no children of the marriage. Defendant denied that plaintiff demeaned herself as a kind wife and alleged that plaintiff had constantly boasted that she had married him for his money. Defendant denied the general allegations of cruelty and admitted that he was not always a loving husband but alleged that his conduct was forgiven and condoned by his wife. Defendant denied that the plaintiff had given no reason for him to treat her cruelly and admitted that he had assets of great value. Defendant also alleged that he

and his wife were cohabiting together; that the complaint was insufficient as a matter of law; and that the injunction was illegally issued. Defendant prayed that the plaintiff's complaint be dismissed for want of equity.

A petition for allowance of temporary alimony and attorney's fees was filed on October 28, 1955, and defendant filed his motion to strike, pleading the insufficiency of the complaint. On November 10, 1955, an order was entered awarding temporary alimony in the amount of $500 per month and temporary attorney's fees in the amount of $500 plus costs of the suit. Defendant was also ordered to pay utility bills and provide maintenance about the house occupied by the plaintiff. Thereafter, defendant filed a motion to dismiss the complaint and vacate the order of November 10, 1955, and on the 18th day of November, this motion was continued generally on the court's own motion. Later an agreed order awarding temporary alimony and attorney's fees was entered providing for alimony in the amount of $350 per month retroactive to November 1, 1955, plus a payment of $525 to be made before December 10, 1955, a payment of $175 to be made before December 15, 1955, and $350 each month thereafter. Plaintiff was awarded $500 for her temporary attorney's fees and defendant was ordered to pay for outside maintenance of the home of the plaintiff and for plaintiff's utilities.

Numerous motions were filed during the pendency of this litigation with motions to strike following. As an example of the intense feeling between the parties when the husband petitioned for a modification of the injunction so as to secure personal items from the house, the wife countered with a demand for more money from her husband to replace the items requested by the husband.

At the conclusion of the hearing, June 22, 1956, on the issues joined by the original complaint for separate

290

maintenance and the answer thereto, the court continued the cause for final arguments. By leave of court, plaintiff filed an amended complaint for divorce on October 9, 1956 to which defendant filed an answer. At the same time defendant obtained leave of court and filed a supplemental cross-complaint for divorce alleging desertion. Plaintiff filed a motion to strike defendant's supplemental cross-complaint for divorce. The defendant in his supplemental cross-complaint for divorce alleged that the plaintiff was guilty of wilful desertion for more than one year in that she filed an action for separate maintenance while living with the defendant and without cause and obtained an injunc- and kept the injunction in force and refused to live and cohabit with the defendant for more than one year.

Plaintiff's motion to dismiss the supplemental cross-complaint was allowed and the supplemental cross-complaint for divorce was stricken. This action of the trial court is assigned as error.

Subsequently, on March 15, 1957, plaintiff's complaint for separate maintenance and amended complaint for divorce were found to be without merit and dismissed for want of equity and the injunction heretofore issued dissolved.

On the question of the attorney's fees, evidence was offered to the effect that plaintiff's counsel had rendered professional services totaling about 96 hours from October 6, 1955, to November 7, 1956. There was opinion testimony that the reasonable customary and usual charge in Kane county for similar services was $5,000. On cross examination it was brought out that the minimum charge in Kane county was $15 to $20 per hour, and that on the basis of this rate, the minimum charge would not exceed $2,000.

Testimony concerning a reasonable fee for plaintiff's attorneys to defend the appeal was also offered. The same attorney who testified that $5,000 was a reasonable fee for the trial of the separate mainte-

D

nance action testified concerning a fee to defend the appeal. He stated he was familiar with the case, that 100 hours would be consumed in the appeal and that one day would be spent in the Appellate Court on argument. He testified that a reasonable fee would be $40 per hour and $250 for the appearance in the Appellate Court. The court allowed a fee of $3,000 for the plaintiff's attorneys to defend the appeal. In this regard, it should be noted that neither counsel requested oral argument and no appearance was made in the Appellate Court.

█ It is conceded by counsel for both parties that the question of the alleged desertion of the plaintiff by reason of the injunction secured by the plaintiff presents a novel question in Illinois. This point heretofore has not been determined by courts of review. However, we believe that the interposition of the injunction should not greatly complicate nor change the consequences of the conduct of the parties hereto. In our judgment, the fact that the parties are living apart because of an injunction is of no more consequence than if an action for divorce or separate maintenance were commenced and the parties then lived separate and apart. It is against public policy for parties to live together during the pendency of such an action. In the case of Floberg v. Floberg, 358 Ill. 626, the court said, "The general rule is where a suit for divorce is brought and the same is pending between the parties to the marriage contract, the parties are not only justified in living apart but necessarily must do so." This being so, the injunction is of no more legal significance than the usual suit of divorce or separate maintenance and the ordinary rule should apply to determine if the separation during the pendency of the litigation constituted "desertion" within the meaning of the statute. Illinois Revised Statutes 1957, Chapter 40, Section 1 provides in part: "If during the period of any deser-

tion which if uninterrupted for one year would be a ground for divorce under this act litigation for either divorce or separate maintenance shall pend between the parties, the time so consumed by said litigation shall not be deducted in any computation of the desertion period."

In the case of Snavely v. Snavely, 349 Ill. App. 369, the court stated, "Defendant put in motion a course of events which resulted in plaintiff being unlawfully and forcibly ejected from his home. Being the active party, defendant was guilty of wilful desertion. Schneider v. Schneider, 286 Ill. App. 575; Mathews v. Mathews, 227 Ill. App. 465."

█ In this case the plaintiff secured an injunction which resulted in the defendant being ejected from his home. In our judgment, if the action was unlawful or in bad faith, then the plaintiff was guilty of desertion.

█ The evidence shows that plaintiff and defendant were living together the day that the suit for separate maintenance was filed. The complaint did not allege nor was there any proof that the parties were living separate and apart without fault on the part of the plaintiff. Contrariwise, the pleadings of the defendant and the evidence showed conclusively that plaintiff and defendant had lived together until the day the suit was filed. A complaint lacking an allegation that the parties are living separate and apart without fault on the part of the plaintiff fails to state a cause of action. As was said in Klemme v. Klemme, 37 Ill. App. 54, "A condition precedent to such a decree is that the wife shall live separate and apart from her husband. The fact must be alleged in the bill and supported by the proof."

Under the pleadings and the proof in this case it should have been apparent to everyone that plaintiff could not prevail and therefore we conclude that the suit could not have been filed in good faith.

In Greene v. Greene, 329 Ill. App. 174, the plaintiff filed her complaint for separate maintenance alleging desertion. The defendant husband filed a counterclaim asking for divorce on the grounds of desertion. The evidence showed that the wife had left the marital domicile. Plaintiff's complaint and defendant's counterclaim were dismissed by the trial court and the defendant appealed. Defendant contended that plaintiff's suit was not commenced in good faith and so the running of the period of desertion was not tolled by the pendency of plaintiff's suit. The Court reversed that portion of the decree dismissing the counterclaim and stated, "The evidence shows that the separation was plaintiff's fault rather than defendant's. From an examination of the evidence it appears that plaintiff was not warranted in leaving her home and that the chancellor properly dismissed plaintiff's complaint for want of equity in that plaintiff had failed to prove her case by a preponderance of evidence. . . . Although the law of this state is strongly in favor of maintaining the integrity and permanency of the marriage relation it does not look with favor on a woman leaving her home without cause, and living separate and apart from her husband and collecting alimony from him for her support and maintenance."

Plaintiff's contention that defendant should not have been granted leave to file his supplemental cross-complaint because defendant's cause of action was non-existent at the time of the conclusion of the taking of the evidence, did not conform to the evidence as it existed on June 22, 1956 and denies plaintiff an opportunity to defend against the counter-claim, is without merit.

At the close of the hearing on June 22, 1956 the cause was continued for final arguments. Section 39 of the Civil Practice Act (Ill. Rev. Stat. 1957, Chap. 110, Sec. 39) permits of the filing of supplemental

pleadings such as the cross-complaint in the instant case. (Woodruff v. City of Chicago, 326 Ill. App. 577, Thomas v. Thomas, 250 Ill. 345.) Neither by this section nor by Section 46 of the Civil Practice Act (Ill. Rev. Stat. 1957, Chap. 110, Sec. 46) entitled Amendments, is there any requirement that the supplemental or amended pleading conforms to the evidence before final judgment. Upon the trial courts overruling the plaintiff's motion to dismiss the supplemental cross-complaint on remandment the plaintiff should be granted leave to plead further.

Likewise, plaintiff's argument that defendant's appeal from the order of November 7, 1956, dismissing the supplemental cross-complaint was not in apt time, is without merit. No judgment was entered upon the allowance of the motion to dismiss on November 7, 1956 until April 2, 1957, consequently the order as it existed until April 2, 1957, striking the supplemental cross-complaint was not a final appealable order. (Heiden v. Tambone, 6 Ill.App.2d 325, Abs. and Lurie v. Dombroski, 7 Ill.App.2d 543, Abs.)

██ Concluding, as we have, that this suit was not commenced in good faith, we find the orders allowing attorney's fees to be erroneous also. It cannot be disputed but that the allowance of attorney's fees lies within the sound discretion of the Court. Here we find an abuse of discretion in awarding any attorney fees where the suit has not been commenced in good faith. We are not unmindful of the cases authorizing the allowance of attorney's fees without regard to the outcome of the case and we are not influenced in our judgment by the finding of the trial court that plaintiff's cause was without merit. Here, however, the suit was commenced while the parties were living together as husband and wife. It is not the unsuccessful conclusion, but rather the patent insufficiency of the suit when commenced which compels us to conclude that

the allowance of any attorney's fees for the plaintiff is error. The facts of this particular case do not appeal to the conscience of a Court of equity and the order allowing $5,000 as attorney's fees for the prosecution of the suit is reversed and the order allowing $3,000 as attorney's fees on account of the appeal taken by the defendant is reversed.

The order dismissing defendant's supplemental cross-complaint is also reversed and the cause is remanded to the Circuit Court of Kane county with directions to overrule the motion to dismiss the supplemental cross-complaint.

Reversed and remanded with directions.

DOVE, P. J. and McNEAL, J., concur.